# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

RAAM CONSTRUCTION INC, a California corporation,

    Plaintiff and Counter Defendant,

       v.

UNITED STATES OF AMERICA,

    Defendant and Counter Claimant.

Case No. 2:25-cv-04681-SPG-AJR

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 25]**

Before the Court is the Motion for Summary Judgment, (ECF No. 25 ("Motion")), filed by Defendant and Counter Claimant United States of America (the "United States" or the "Government"). The Court has read and considered the matters raised with respect to the Motion and concluded that this matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

## I.    BACKGROUND

Plaintiff RAAM Construction Inc. ("Plaintiff") brings this tax refund suit against the United States, contending that it is entitled to a tax refund for federal employment taxes paid for the quarters ending in December 31, 2020, ("Q4 2020"), March 31, 2021, ("Q1 2021"), June 30, 2021, ("Q2 2021"), and September 30, 2021, ("Q3 2021") (collectively,

-1-

the "Tax Periods") pursuant to the Employee Retention Credit ("ERC").  *See* (ECF No. 1 ("Compl.")).  As described below, the ERC was a tax credit against applicable employment taxes for employers that closed or suspended operations due to public health orders related to COVID-19.  *See infra* at § III.A.  The Government filed a counterclaim against Plaintiff, seeking re-payment of a tax refund erroneously issued pursuant to the ERC for Q1 2021 and Q2 2021.  *See* (ECF No. 9 ("Counterclaim")).

A.    **Factual Background**[1]

1.    Executive Order N-33-20, Safer at Home Order for Control of COVID-19, and COVID-19 Workplace Guidelines

On March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20, ordering all California residents to comply with State public health directives and to stay at home in response to the threat of COVID-19.  (JAF 29, 30); *see* (ECF No. 25-3, Ex. 3 ("Executive Order N-33-20") at 30).[2]    Those working in certain "critical infrastructure sectors" were excepted from this Executive Order.  (JAF 30).

In accordance with Executive Order N-33-20, on April 20, 2020, the County of Los Angeles Department of Public Health issued "Safer at Home Order for Control of COVID-19."  (JAF 32); *see* (ECF No. 25-3, Ex. 5 ("Safer at Home Order") at 36).  The Safer at Home Order required "all businesses to cease in-person operations and remain closed to the public, unless the business [was] defined as an Essential Business by this

---

[1] The following summarized facts are uncontroverted unless otherwise stated.  *See* (ECF No. 25-1 (Joint Appendix of Facts ("JAF"))).  When determining a motion for summary judgment, the Court considers only evidence admissible at trial, though the form may differ at the summary judgment stage.  *Godinez v. Alta-Dena Certified Dairy LLC*, No. 15-cv-01652-RSWL-SS, 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).  The Court has reviewed the entire record, including the parties' JAF, objections, and evidence.  The Court discusses only the facts that are relevant to its decision.  To the extent the Court relies on evidence that is subject to an objection, the Court overrules the objection for this Motion.  To the extent the Court does not rely on evidence objected to by the parties, the objections are overruled as moot for this Motion.

[2] Executive Order N-33-20 was rescinded by Executive Order N-07-21 on June 11, 2021.  (JAF 31); *see* (ECF No. 25-3, Ex. 4 ("Executive Order N-07-21") at 33).

Order." (JAF 33). These essential businesses included construction, plumbers, electricians, HVAC installers, carpenters, landscapers, and property managers. (JAF 34, 35). In addition, the Safer at Home Order required isolation of all individuals with confirmed or presumed COVID-19 diagnoses, regardless of vaccination status, previous infection, or lack of symptoms. (JAF 37). Further, all individuals with close contacts with the general public were required to wear a highly protective mask when indoors for ten (10) days, monitor their health for ten (10) days for COVID-19 symptoms, and get tested three (3) to five (5) days after their last exposure to the virus. (JAF 39).

The County of Los Angeles Department of Public Health also issued guidelines entitled "Responding to COVID-19 in the Workplace." (JAF 41); *see* (ECF No. 25-3, Ex. 6 ("COVID-19 Workplace Guidelines" or "Guidelines") at 48). The Guidelines stated that employers "should have procedures in place for seeking information from employees related to COVID-19 cases and close contacts in the workplace." (JAF 41). Once a COVID-19 case was identified at the workplace, the Guidelines required an employer to (i) "[i]mmediately exclude the case from the workplace until they meet all return-to-work criteria"; (ii) "[d]etermine who may have been a close contact to the case at the workplace"; (iii) "[i]nform all close contacts within 1 business day in a manner that does not reveal the case's personal information"; (iv) "[n]otify everyone that was on the premises at the same worksite as the infectious case of their potential exposure"; (v) "[i]dentify and correct COVID-19 hazards"; and (vi) "report any cluster of worksite cases within 24 hours." (JAF 42).

### 2.     Plaintiff's Operations During the Tax Periods

Plaintiff is a construction company that specializes in constructing multi-family housing projects and maintains a principal place of business in Los Angeles County, California. (JAF 1, 3). During the COVID-19 pandemic, Plaintiff was designated an "essential business" under the Safer at Home Order and permitted to continue its operations. (JAF 36, 83). Despite this designation, Plaintiff experienced delays in its engaged construction projects. *E.g.* (JAF 83). Plaintiff asserts, and the Government

-3-

disputes, that these delays were because of the enactment and implementation of Executive Order N-33-20, Safer at Home Order for Control of COVID-19, and COVID-19 Workplace Guidelines. *E.g.* (JAF 52).  According to Plaintiff, the Executive Order N-33-20, Safer at Home Order for Control of COVID-19, and COVID-19 Workplace Guidelines "require[ed] social distancing, mandatory self-quarantine, isolation, and mandatory absences applicable to not only sick employees but employees with a sick household member," (JAF 52), which limited the number of employees at Plaintiff's construction sites and ultimately delayed Plaintiff's "ability to perform its duties to contracting parties and stalling its progress on projects," (JAF 53).

### 3. Plaintiff's Tax Filings

On September 16, 2022, the Internal Revenue Service ("IRS") received Plaintiff's Forms 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, based on the ERC, for Q4 2020, Q1 2021, Q2 2021, and Q3 2021.  (JAF 18–22).  Plaintiff sought a refund of $366,438.00 for Q4 2020, $234,571.00 for Q1 2021, $285,899.00 for Q2 2021, and $396,885 for Q3 2021.  (JAF 19–22).

On January 25, 2024, IRS Exam sent a letter to Plaintiff disallowing the claims for refund for the Tax Periods.  (JAF 23).  On February 26, 2024, Plaintiff requested reconsideration of this denial, (JAF 24), and on August 2, 2024, the IRS Independent Office Appeals sustained the disallowance of the claims for refund, (JAF 25).  On July 3, 2023, the IRS sent Plaintiff a refund of $245,969.72 for Q1 2021, and on April 14, 2025, the IRS sent Plaintiff a refund of $328.336.12 for Q2 2021.  (JAF 26, 27).  The chart below depicts the ERC claimed by Plaintiff and the refunds issued by the IRS as described in the JAF.

|  | Q4 2020 | Q1 2021 | Q2 2021 | Q3 2021 |
|---|---|---|---|---|
| **ERC Claimed** | $366,438.00 | $234,571.00 | $285,899.00 | $396,885.00 |
| **Refund Issued** | N/A | $245,696.72 | $328,336.12 | N/A |

(JAF 19, 20, 21, 22, 26, 27).

**B.     Procedural History**

Plaintiff filed the Complaint on May 22, 2025, asserting a claim pursuant to 26 U.S.C. § 7422 and 28 U.S.C. §§ 1340 and 1346 for the refund of employment taxes in the aggregate amount of $1,026,452.00.  (Compl.).  On July 2, 2025, the United States filed an Answer, as well as a Counterclaim pursuant to 26 U.S.C. §§ 7401 and 7405, seeking a judgment against Plaintiff for an erroneous refund Defendant issued in the aggregate amount of $574,305.84 plus interest, as allowed by law.  (Counterclaim).  On July 7, 2025, Plaintiff filed an Answer to the Counterclaim.  (ECF No. 10).

Defendant filed the Motion on March 24, 2026, seeking summary judgment on the Complaint and Counterclaim.  (Mot.).  Plaintiff opposed the Motion.  *See* (*id.*).  Defendant filed a Reply on March 31, 2026.  (ECF No. 26 ("Reply")).

**II.     LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of establishing the absence of any genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  Once the moving party

satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that generic disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(c), (e)) (emphasis omitted). No genuine issue for trial exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.*

Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[C]onclusory and speculative affidavits that fail to set forth specific facts" are insufficient to raise a "genuine issue of material fact." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738–39 (9th Cir. 1979).

## III.   DISCUSSION

The United States asserts that: (A) Plaintiff is not entitled to a tax refund under the ERC because it is not an eligible employer; and (B) it is entitled to summary judgment on Plaintiff's claim for tax refund and its own counterclaim for unpaid federal employment taxes. *See* (Mot. at 17, 25).

### A.     Employee Retention Credit ("ERC")

First enacted as a part of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), the Employee Retention Credit is a "refundable tax credit that subsidized employers who were forced to close or suspend operations due to COVID-19-related public health orders." *Gravenstein 116, LLC v. United States*, 180 Fed. Cl. 292, 294 (2026) (citing Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 2301, 134 Stat. 281, 347–51 (2020)). Eligible employers could seek "credit against applicable employment taxes for each calendar quarter an amount equal to 70 percent of the qualified wages with respect to each employee of such employer for such calendar

quarter" for wages paid between the enactment of the CARES Act in March of 2020 and October 1, 2021.  26 U.S.C. §§ 3134(a), (n).[3]

Section 3134(c) sets forth criteria for employers to demonstrate eligibility for the tax credit.  *See In re JSmith Civ., LLC*, 674 B.R. 207, 213 (Bankr. E.D. N.C. 2025) (recognizing that because the ERC "contains more traditional and onerous eligibility criteria," it is a "'presumption-out' statute, where everyone starts outside of eligibility for the stated relief, and claimants must show why they fit within and satisfy applicable statutory definitions to get 'in' and qualify for the relief").

Under section 3134(c)(2)(A), an "eligible employer" is any employer:

(i)     which was carrying on a trade or business during the calendar quarter for which the credit is determined . . . ; and

(ii)    with respect to any calendar quarter, for which—

(I)     the operation of the trade or business described in clause (i) is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19),

---

[3] The CARES Act was first enacted on March 27, 2020.  The ERC was thereafter extended and modified for calendar quarters in 2021 through the Taxpayer Certainty and Disaster Tax Relief Act of 2020, Pub. L. No. 116-260, 134 Stat. 1182 (Div. EE) (2020), section 9651 of the American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4 (2021) (codified at 26 U.S.C. § 3134), and section 80604 of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429, 1341 (2021).  *See In re PS On Tap, LLC*, 669 B.R. 56, 62–63 (Bankr. C.D. Cal. 2025), *aff'd sub nom. In re PS OnTAap, LLC*, No. 2:25-cv-03494-MRA, 2026 WL 866792 (C.D. Cal. Mar. 30, 2026) (describing legislative history of the ERC).  The definition for "eligible employer" was not substantively altered through these extensions.  The American Rescue Plan Act codified the ERC at 26 U.S.C. § 3134. For the purposes of this Order, and because the parties both cite to 26 U.S.C. § 3134, citations to the ERC will refer to 26 U.S.C. § 3134.  *See, e.g.*, (Mot. at 17, 22).

-7-

   (II) the gross receipts (within the meaning of section 448(c)) of such employer for such calendar quarter are less than 80 percent of the gross receipts of such employer for the same calendar quarter in calendar year 2019, or

   (III) the employer is a recovery startup business.

26 U.S.C. §§ 3134(c)(2)(A)(i)–(ii).

Section 3134 does not define "fully or partially suspended," "due to," or "orders from an appropriate governmental authority." *See id.* Where Congress does not expressly define a term, courts "construe a statutory term in accordance with its ordinary or natural meaning." *F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994) (referencing Black's Law Dictionary to interpret undefined statutory terms); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). Where an agency has proffered interpretations of statutory language, a court may exercise "independent judgment" and consider such guidance, provided it does not defer to the agency. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (courts may consider agency guidance based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control").

The parties do not dispute that Plaintiff "was carrying on a trade or business" during the Tax Periods—during Q4 2020, Q1 2021, Q2 2021, and Q3 2021. It is also not in dispute that Plaintiff's gross receipts were not less than eighty (80) percent of the gross receipts of such employer for the same calendar quarter in calendar year 2019, and that Plaintiff is not a recovery startup business. Thus, at issue is whether Plaintiff's operations were "fully or partially suspended . . . due to orders from an appropriate governmental authority." *See* 26 U.S.C. §§ 3134(c)(2)(A)(ii)(I)–(III).

1. <u>"Orders From An Appropriate Governmental Authority"</u>

Plaintiff contends that its operations were partially suspended due to the following three governmental orders: (1) Executive Order N-33-20; (2) Safer at Home Order; and (3) COVID-19 Workplace Guidelines. (Mot. at 22). The Government disagrees, arguing that Plaintiff's cited authorities are not "orders from an appropriate governmental authority" under a plain language reading of the statute because the authorities did not compel designated essential businesses like Plaintiff to suspend their operations. (*Id.* at 20).

Section 3134 does not define "orders from an appropriate governmental authority" and, thus, the Court turns to the terms' plain meaning. "Order," as defined by Black's Law Dictionary, is a "command, direction, or instruction." *Order*, Black's Law Dictionary (12th ed. 2024). Government authority is "[a]n official organization or government department with particular responsibilities and decision-making powers; esp., a government agency or corporation that administers a public enterprise." *Authority*, Black's Law Dictionary.

Command, direction, and instruction hold different connotations, each signaling a decreasing level of compliance. While a "command" is authoritative and implies binding requirements or repercussions for noncompliance, a "direction" or "instruction" is interpreted as guidance or a suggestion. *See In re JSmith Civ., LLC*, 674 B.R. at 214–15 (discussing plain language definition of "order") (citing *Lawrence Gen. Hosp. v. Cont'l Cas. Co.*, 90 F.4th 593, 604 (1st Cir. 2024) ("an 'order' must be compulsory"). The Government argues that an order is a compulsory directive, (Mot. at 20), and Plaintiff does not dispute this interpretation, *see* (Mot. at 22) ("[C]ity and county orders required [Plaintiff] to formulate and implement strategies to limit contact among its employees . . . ."). Reading "orders from an appropriate governmental authority" in the context of section 3134, the Court finds that a qualifying order is a compulsory directive issued by a government department that ha responsibilities to limit commerce, travel, or group meetings due to COVID-19. *See JPM Rest., LLC v. United States*, No. 1:24-cv-357,

2026 WL 561147, at *4 (E.D. Tenn. Feb. 27, 2026) (interpreting "order" as a compulsory directive) (citing cases).

Guidance from the IRS supports a broader interpretation.[4] Notice 2021-20 describes "orders from an appropriate governmental authority" as follows:

> Orders, proclamations, or decrees from the Federal government or any State or local government may be taken into account by an employer as "orders from an appropriate governmental authority" only if they limit "commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)" and relate to the suspension of an employer's operation of its trade or business.  Orders that are not from the Federal government must be from a State or local government that has jurisdiction over the employer's operations.  These orders are referred to as "governmental orders."   Whether orders, proclamations or decrees are governmental orders is determined without regard to the level of enforcement of the governmental order.

---

[4] Section 3134(m) authorizes the Secretary of the Treasury to "issue such forms, instructions, regulations, and other guidance as are necessary" to facilitate the ERC Program.  26 U.S.C. § 3134(m).  Consistent with this authority, on March 15, 2021, the IRS issued Notice 2021-20, "Guidance on the Employee Retention Credit under Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act."  Guidance on the Emp. Retention Credit Under Section 2301 of the Coronavirus Aid, Relief, & Econ. Sec. Act, 2021-11 I.R.B. 922, 2021 WL 807026, (2021) ("Notice 2021-20"); *see also Stenson Tamaddon LLC v. United States Internal Revenue Serv.*, No. 24-cv-01123-PHX-SPL, 2025 WL 1725942, at *6–*8 (D. Ariz. June 20, 2025) (analyzing validity of Notice 2021-20, including whether issuance of the Notice was beyond the IRS's statutory authority).  Notice 2021-20 was "amplified and clarified" by Notice 2021-49 on August 4, 2021.  *See* Guidance on the Emp. Retention Credit Under Section 3134 of the Code & on Miscellaneous Issues Related to the Emp. Retention Credit, 2021-34 I.R.B. 316, 2021 WL 3465173 (2021).  Together, Notices 2021-20 and 2021-49 provide guidance, in a question and answer format, regarding the application of the ERC as enacted through the CARES Act and American Rescue Plan Act for wages paid after March 12, 2020, and before January 1, 2022.

Statements from a governmental official, including comments made during press conferences or in interviews with the media, do not rise to the level of a governmental order for purposes of the employee retention credit. Additionally, the declaration of a state of emergency by a governmental authority is not sufficient to rise to the level of a governmental order if it does not limit commerce, travel, or group meetings in any manner. Further, such a declaration that limits commerce, travel, or group meetings, but does so in a manner that does not relate to the suspension of an employer's operation of its trade or business does not rise to the level of a governmental order for purposes of the employer's determination of its eligibility for the employee retention credit.

Governmental orders include:

-      An order from the city's mayor stating that all non-essential businesses must close for a specified period;

-      A State's emergency proclamation that residents must shelter in place for a specified period, other than residents who are employed by an essential business and who may travel to and work at the workplace location;

-      An order from a local official imposing a curfew on residents that impacts the operating hours of a trade or business for a specified period;

-      An order from a local health department mandating a workplace closure for cleaning and disinfecting.

Notice 2021-20, 2021 WL 807026.

Based on the plain language interpretation of 26 U.S.C. § 3134(c)(2)(A)(ii)(II), the Court concludes that Executive Order N-33-20 and Safer at Home Order qualify as "orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)," but the COVID-19 Workplace Guidelines does not qualify. The Governor

-11-

of California was vested with authority to proclaim a State of Emergency in the state of California due to COVID-19 and ordered all Californians not working in certain identified critical infrastructure sectors "to stay at home or at their place of residence." *See* (Executive Order N-33-20 at 31). Executive Order N-33-20 is therefore a limitation on commerce, travel, and group meetings. *See* (*id.*). Thereafter, to comply with Executive Order N-33-20, the County of Los Angeles Department of Public Health issued the Safer at Home Order, which "prohibit[ed] all indoor and outdoor public and private gatherings and events" and "require[d] all business to cease in-person operations and remain closed to the public, unless the business [was] defined as an Essential Business by" the Safer at Home Order. (Safer at Home Order at 37). This, too, was a limitation on commerce, travel, and group meetings issued by a government department with delineated responsibilities and decision-making powers.

However, the COVID-19 Workplace Guidelines, also issued by the County of Los Angeles Department of Public Health, was not such an order. The COVID-19 Workplace Guidelines described procedures for responding to a positive COVID-19 case in the workplace. *See* (COVID-19 Workplace Guidelines at 51). The COVID-19 Workplace Guidelines did not mandate closure of the workplace upon identification of a positive COVID-19 case, nor did they limit commerce, travel or group meetings. Even under the broader interpretation described in Notice 2021-20, the Guidelines was not a government order. At most, the COVID-19 Workplace Guidelines required immediate exclusion of the positive individual from the workplace "until they [met] all return to work criteria." *See* (*id.*). Thus, as it did not limit "commerce, travel, or group meetings," the COVID-19 Workplace Guidelines [was] not an order under section 3134.

The Government's argument that Executive Order N-33-20 and Safer at Home Order are not "orders" because Plaintiff was an essential business speaks to the causation requirement between the government orders and Plaintiff's business operations, not whether the Executive Order N-33-20 and Safer at Home Order themselves were orders, as defined by statute. *See* (Mot. at 20–21). The applicability of Executive Order N-33-20

and Safer at Home Order to Plaintiff has no bearing as to whether they independently qualify as governmental orders under section 3134.  The Court thus concludes that Executive Order N-33-20 and Safer at Home Order fall within the meaning of "orders from an appropriate governmental authority."

2.    "Fully or Partially Suspended"

The Government next argues that Plaintiff's business operations were not fully[5] or partially suspended because (i) Plaintiff's operations continued through the relevant tax periods, with open worksites and completed projects; and (ii) Plaintiff's net income nearly doubled every year between 2019 and 2021.  (*Id.* at 18–19).  In response, Plaintiff argues that the Government's interpretation of the phrase "partially suspended" is overly narrow, and Plaintiff disputes the Government's characterization of its operations.  (*Id.* at 22–23).

As stated previously, section 3134 does not provide a definition for "partially suspended."  Therefore, the Court again construes the phrase based on its plain meaning. *See Meyer*, 510 U.S. at 476; *see also JPM Rest., LLC*, 2026 WL 561147, at *4 (recognizing that the CARES Act does not define a "full or partial suspension").  Black's Law Dictionary defines "suspend" as "[t]o interrupt; postpone; defer," or "[t]o temporarily keep (a person) from performing a function, occupying an office, holding a job, or exercising a right or privilege."  *Suspend*, Black's Law Dictionary.  Webster's Dictionary defines "full" as "complete especially in detail, number, or duration," or "lacking restraint, check, or qualification."    *Full*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/full (last visited June 22, 2026).  In addition, "partial" is defined as "of or relating to a part rather than the whole"; "not general or total."  *Partial*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/partial (last visited June 22, 2026).  Taken together, this Court construes business operations as being "partially suspended" when a portion of the operations are temporarily interrupted or prevented from complete performance.  Other courts have similarly construed the phrase

---

[5] Plaintiff does claim that its operations were fully suspended, given that it is undisputed Plaintiff was designated as an essential business.  (JAF 36).

-13-

"partially suspended" as used in section 3134. *See JPM Rest., LLC*, 2026 WL 561147, at *4 (interpreting a "partial suspension" as "a suspension of at least some, but less than all operations" by referencing Black's Law Dictionary and Webster's Dictionary); *In re JSmith Civ., LLC*, 674 B.R. at 214 (interpreting "partial suspension" as "a temporary stoppage of a portion of operations" by citing to Black's Law Dictionary). Thus, Plaintiff's operations were "partially suspended," if a portion of its multi-family housing construction projects were temporarily interrupted or prevented from complete performance during the Tax Periods. *Compare JPM Rest., LLC*, 2026 WL 561147, at *4 (a partial suspension of a restaurant would entail "reducing hours, shutting down one or multiple areas of the restaurant, or reducing services offered").

In support of its claim, Plaintiff asserts that its operations were delayed due to COVID-19 and Plaintiff being required to comply with the social distancing protocols by reducing its workforce and staggering workers' shifts. *See* (JAF 49, 52–56). In particular, Plaintiff asserts that, at various times during the Tax Periods at issue, Plaintiff "operated with skeleton crews, which further delayed completion [Plaintiff's] construction contracts" because its staff and subcontractors were sick with COVID-19 and unable to work. (JAF 66). In addition, Plaintiff asserts that it "encountered building material and supply shortages and limited and delayed deliveries of building supplies and appliances, all of which caused delays," such as lumbar, hardware, drywall, metals, and appliance shortages. (JAF 63, 67).

In fact, a number of Plaintiff's ongoing projects during the Tax Periods were not completed for months or years after the contractual end date. *See* (JAF 69–73). For example, Plaintiff was "contractually bound" to complete the Lincoln Project in Pasadena by April 29, 2020, but the project was not completed until May 27, 2022. (JAF 73). The Lincoln Project's contractual terms required Plaintiff to install at least five units of drywall per day; however, during the relevant Tax Periods, Plaintiff was only able to install two units of drywall per day due to fewer individuals working on its crews. (JAF 54). The developer for the Lincoln Project also directed Plaintiff to shut down the project due to

COVID-19 outbreaks at the worksite. (JAF 74). Based on these facts, both viewed in the light most favorable to Plaintiff and with all reasonable inferences being drawn from them, *Scott*, 550 U.S. at 378, Plaintiff has demonstrated that there is a genuine dispute of material fact as to whether it experienced a partial suspension of its business operations during the relevant Tax Periods.

Although the Government argues that Plaintiff did not experience a partial suspension because Plaintiff's gross receipts increased over the relevant Time Period, that argument is unavailing. Section 3134(c)(2)(A)(ii) establishes three methods by which an employer may qualify for the ERC. First, an employer may show that its operations were partially or fully suspended due to orders from an appropriate governmental authority. 26 U.S.C. § 3134(c)(2)(A)(ii)(I). Second, an employer may show that "the gross receipts for such calendar quarter are less than 80 percent of the gross receipts of such employer for the same calendar quarter in calendar year 2019." *Id.* § 3134(c)(2)(A)(ii)(II). Third, an employer may show that it is a recovery startup business. *Id.* § 3134(c)(2)(A)(ii)(III). Plaintiff contends that it is an eligible employer based on the partial suspension of its operations due to various government orders issued by the state of California and Los Angeles County. *See* (Mot. at 22–25). The Government's reference to Plaintiff's gross receipts to rebut Plaintiff's qualification as an eligible employer collapses the distinctions between §§ 3134(c)(2)(A)(ii)(I) and 3134(c)(2)(A)(ii)(II) and contravenes a plain language reading of the statute. *See also JPM Rest., LLC*, 2026 WL 561147, at *9. The Court thus finds that, under an ordinary interpretation of "partially suspended," Plaintiff has created a genuine dispute of material fact that its operations were partially suspended during the relevant Tax Periods.

### 3. "Due To"

To prevail on its claim, Plaintiff must show any partial suspension of Plaintiff's operations during the relevant Tax Periods was also "due to" the Executive Order N-33-20 and/or Safer at Home Order. *See* 26 U.S.C. § 3134(c)(2)(A)(ii). The Government argues that, because Plaintiff was an essential business, Executive Order N-33-20 and Safer at

Home Order are inapplicable to Plaintiff and Plaintiff was exempt from the requirements established therein. (Mot. at 20–21). Thus, argues the Government, any suspension of Plaintiff's operations was due to general pandemic conditions, not Executive Order N-33-20 or Safer at Home Order. (*Id.* at 20); (Reply at 3). The Government also argues that the Court should construe the phrase "due to" as requiring but-for causation.

Plaintiff argues that the Government is incorrectly advancing a very narrow interpretation of the language of section 3134(c)(2)(A)(ii)(I), which would require that a partial suspension be the result of a direct Governmental order to completely shut down a business. (Opp. at 22). Plaintiff points out that, due to government orders, Plaintiff took certain measures that "caused serious delays in construction and adversely affected [Plaintiff's] ability to operate its business." Plaintiff contends that its showing is sufficient for section 3134(c)(2)(A)(ii)(I) to apply. Plaintiff's Opposition, however, does not specifically address the level of causation required to satisfy the "due to" element under section 3134. (Mot. at 22–23).

As previously stated, the phrase "due to" is not defined by section 3134, and the statute does not describe the degree of causation required for an entity to establish eligibility for the ERC. The Ninth Circuit also has not addressed the level of causation required under section 3134 to establish that an entity's business operations were partially suspended "due to" a governmental order. *E.g. Tri-State Mem'l Hosp. v. United States*, No. 2:25-CV-0181-TOR, 2026 WL 1497190, at *7 (E.D. Wash. May 28, 2026) (conducting a plain language analysis of "due to" under 26 U.S.C. § 3134). In the absences of a statutory definition, the Court again turns to the plain meaning of the phrase. According to the Meriam-Webster Dictionary, "due to" means "as a result of, because of." *See Due To*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/due%20to (last visited June 22, 2026). The district court in *JPM Rest* recently interpreted the phrase "due to" as requiring "both factual and proximate causation." *JPM Rest., LLC*, 2026 WL 561147, at *5. In other words, the government order "must have been the 'but-for' cause and a foreseeable cause" of any full or partial

-16-

suspension in operations. *Id.* The court reasoned that, "that due to the ERC being a presumption-out statute, the intent of Congress was to limit eligibility rather than paint with a broad brush," and [l]engthy causal chains that could arise from a but-for test without a proximate causation requirement would risk turning the ERC into a presumption-in statute." *Id.* Additionally, the court found that, given the compulsory nature of a government order that must have caused the shutdown … read in context, Congress was intending to offer relief to those who were directly affected by government orders rather than offering broad relief to anyone indirectly affected by the pandemic." *Id.* Further, the court point out that "[t]here are other provisions in the CARES Act that offered such broader relief, such as stimulus checks" and that [t] he breadth of other relief available in the same Act suggests that Congress did not intend the ERC to provide the same expansive relief that could arise from a mere factual causation requirement." *Id.*

The Government urges the Court to adopt the above reasoning of *JPM Rest.* Based on a plain language interpretation of "due to" and the nature of the ERC, the Court finds the reasoning of the *JPM Rest* court persuasive. "In common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007). Thus, in "various statutory schemes," the ordinary meaning of "because of" and similar phrases "mandates but-for causation." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1209 (9th Cir. 2021) (citing cases). Preeminently, in *Bostock v. Clayton Cnty., Georgia*, the Supreme Court recognized that the ordinary meaning of "because of" incorporates the standard of but-for causation for a Title VII employment discrimination claim "because of sex." 590 U.S. 644, 655–56 (2020). When interpreting the ordinary meaning of "results from" in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, the Court similarly held that such a phrase "imposes a requirement of but-for causation." *Burrage v. U.S.*, 571 U.S. 204, 213–14 (2014). Additionally, when interpreting the Fair Credit Reporting Act, 15 U.S.C. § 1681(m)(a), *Safeco Ins. Co. of Am.*, 551 U.S. at 63, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c), *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265–66 (1992),

-17-

and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009), the Supreme Court has interpreted phrases like "because of," "based on," and "by reason of" to indicate a but-for causal relationship. The Court thus concludes that, to demonstrate causation for purposes of the ERC, the government order must be the "but-for" cause for the full or partial suspension of an entity's operations.

Here, in support of the Motion, the Government argues any disruption Plaintiff experienced during the Tax Periods, such as "illnesses, quarantines, and delays in receiving materials and conducting inspections," were "the result of general pandemic conditions, not governmental orders." (Mot. at 20). In opposition, Plaintiff argues that, "because of the governmental orders, [Plaintiff] experienced numerous severe delays and other hinderances to its ability to function during the [Tax Periods]." (*Id.* at 22). Plaintiff also asserts that "city and county orders required [Plaintiff] to formulate and implement strategies to limit contact among its employees, to wear appropriate personal protective equipment (PPE) and to take other measures which caused serious delays in construction and adversely affected [Plaintiff's] ability to operate its business." (*Id.* at 22–23). Plaintiff, however, does not point to specific facts demonstrating that, absent issuance of Executive Order N-33-20 and Safer at Home Order, it would not have experienced the purported partial suspension in its operations.

For instance, Plaintiff asserts that the developer for the Lincoln Project directed Plaintiff to shut down the project due to COVID-19 outbreaks at the worksite. *See* (JAF 74). But as the Government notes in its objection, Plaintiff does not attribute this shut down to Executive Order N-33-20 and Safer at Home Order, or any other governmental order. *See* (JAF 74). Plaintiff also states that it "encountered building material and supply shortages and limited and delayed deliveries of building supplies and appliances, all of which caused delays" in its projects. (JAF 63, 67). Yet Plaintiff does not describe facts related to such material and supply shortages, such as the length of delay, to create a material dispute of fact that the Executive Order N-33-20 and Safer at Home Order

were the but-for causes of this delay.  Instead, Plaintiff states the facts as described in the JAF are merely "[b]y way of an example only." *E.g.* (JAF 54).  Though analyzing the causal chain is "necessarily speculative," ordinarily determined by the trier of fact, summary judgment is appropriate "where the party with the burden of proof at trial submitted no evidence from which causation could be inferred." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 821 (9th Cir. 2014).  Therefore, although the Court found a dispute of material fact as to whether Plaintiff's operations were partially suspended during the Tax Periods, Plaintiff has submitted no evidence of a causal chain between Executive Order N-33-20 and Safer at Home Order and any partial disruption of Plaintiff's operations.  *Stenson Tamaddon LLC*, 2025 WL 1725942, at *9 ("A business voluntarily suspending its own operations has not been suspended *due to orders from an appropriate governmental authority* but rather has suspended operations of its own volition.").  The Government has therefore met its burden of demonstrating that Plaintiff "does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1106.  Accordingly, because Plaintiff has not come forward with specific facts to show a genuine dispute of material fact exists as to whether either Order N-33-20 or Safer at Home Order was the but-for cause of any partial suspension of Plaintiff's operations, the Court GRANTS summary judgment on Plaintiff's claim in favor of the Gvoernment.[6]

---

[6] The Court, however, rejects the Government's contention that Executive Order N-33-20 and Safer at Home Order do not apply to Plaintiff simply because Plaintiff was designated as an "essential business."  This interpretation of section 3134 reads a requirement not present in the statute. *See* (Mot. at 20).  The statute does not limit "eligible employer[s]" to "non-essential business[es]"; employers whose operations were "partially suspended," but presumably conducted operations in other respects, could be eligible for the ERC. *See, e.g.*, *Bates v. United States*, 522 U.S. 23, 29 (1997) (Courts "ordinarily resist reading words or elements into a statute that do not appear on its face.").  Indeed, IRS Guidance explicitly contemplates that designated essential businesses could be eligible for the ERC. *See* Notice 2021-20, 2021 WL 807026 ("[A]n employer that operates an essential business may be considered to have a partial suspension of operations if, under the facts and circumstances,

## B.    Erroneous Refund

The Government also seeks summary judgment on its counterclaim for erroneous refund, arguing that Plaintiff is liable to repay the United States $574,032.84 with interest. (Mot. at 25).  Plaintiff disagrees, arguing that it was entitled to the amount as an ERC credit.  (*Id.*).  It is undisputed that Plaintiff was issued $574,032.84 pursuant to the ERC for Q1 2021 and Q2 2021, *see* (JAF 26, 27); Plaintiff's only argument is that it was entitled to the refund because it is an eligible employer under section 3134, *see* (Mot. at 25).

Under 26 U.S.C. § 7405, the United States is authorized to recover erroneously made tax refunds by civil action.  26 U.S.C. § 7405(b); *see O'Gilvie v. United States*, 519 U.S. 79, 90–91 (1996).  The government must initiate the suit "within two years after the refund was made," and "[t]he refund is considered to have been made on the date the taxpayer received the refund check."  *United States v. Carter*, 906 F.2d 1375, 1377 (9th Cir. 1990). "To prevail in such an action, the Government must establish "(1) that a refund was paid to the taxpayers; (2) the amount of the refund; (3) that the government's recovery action was timely; and (4) that the taxpayers were not entitled to the refund which the government seeks to recover." *United States v. Dean*, 945 F. Supp. 2d 1110, 1114 (C.D. Cal. 2013) (internal quotation marks and citation omitted).

The Court concludes that there is no material dispute of fact that the Government is entitled to repayment of $574,032.84.  First, it is undisputed that on July 3, 2023, the IRS sent Plaintiff a refund of $245,696.72 for Q1 2021, (JAF 26), and on April 14, 2025, the IRS sent Plaintiff a refund of $328,336.12 for Q2 2021, (JAF 27).  Second, the total amount for the refund is $574,032.84.  (JAF 26, 27).  Third, the Government filed the Counterclaim on July 2, 2025, less than two years after the first refund was made on July 3, 2023. *See* (Counterclaim).  Fourth, as described above and as undisputed by the parties, the ERC was the basis for the Q1 and Q2 2021 refunds.  (JAF 20, 21).  Given that Plaintiff has not

more than a nominal portion of its business operations are suspended by a governmental order.").

-20-

pointed to facts demonstrating a genuine dispute of material fact that the applicable government orders, Executive Order N-33-20 and Safer at Home Order, were the but for cause of any disruption it experienced during the relevant Tax Periods, Plaintiff is not entitled to the ERC refund the Government seeks to recover.   Therefore, the Court GRANTS summary judgment on the Government's erroneous refund counterclaim.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion.

1.   As to Plaintiff's claim, Defendant has satisfied its burden on summary judgment.   Therefore, Plaintiff is not entitled to a refund for the quarters ending December 31, 2020, through September 30, 2021.

2.   As to the Government's counterclaim, Defendant has demonstrated the United States is entitled to unpaid federal employment taxes of $245,969.72 for the quarter ending March 31, 2021, and $328,336.12 for the quarter ending June 30, 2021, plus interest as allowed by law.

3.   Judgement in favor of Defendant shall be entered forthwith.

**IT IS SO ORDERED.**

DATED:  June 23, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-21-